Thank you. May it please the Court. I'm Zachary Nightingale with Co-Counsel Avantika Shastri for Petitioner Xiaofei Edizheng. Could you speak up just a little? Thank you. Who's in court with his extended family. The first issue I'd like to direct the Court's attention to is the 212C denial. The Board below made a fundamental error in failing to consider every factor that its precedent matter of Marin requires. They didn't reference in their brief factual recitation anything about the value or service to the community, which is a clear factor required under a matter of Marin. And they don't have the freedom or the discretion to completely ignore a factor where that was the bulk of the evidence presented, the extensive evidence presented in front of the agency with regard to every one of the factors. The vast majority went to value of the community. The former prosecutor who prosecuted Mr. Edizheng testified on his behalf. The former head of the California Department of Corrections, a 29-year veteran police officer, elected officials responsible to the community, wrote letters of support. All of that went to say that the community is better off and safer with him returned to the community and in the United States. All of that went to value and service to the community. That factor was not even mentioned. It was completely ignored by the Board. The fact that they referred to rehabilitation, which is a separate factor in the list of Marin factors, doesn't matter. There was plenty of evidence of rehabilitation presented also, of course, but rehabilitation and value to the community are not the same thing. As one of the experts testified on his behalf, Mr. Chrisburg, many people are rehabilitated but don't go on to provide value to the community. And Mr. Edizheng is one of those people who has done that and has continued to do that and had already done it. And so those factors really are distinct. It's not sufficient that the Board referenced rehabilitation. Well, do we have what's the case that best explains, in your view, the difference between rehabilitation and value to the community? The value to the community factor is not explained very well in very many cases. There is a decision from this case, from this Court, excuse me, VIRC v. INS, which is 295 F3rd 1055 from 2002. It wasn't a 212C waiver, but it was a discretionary waiver and that did note that the individual in that case had been employed, created and maintained a business employing other Americans. And so that's an example where the value to the community was really separate from rehabilitation. I don't know, I can't claim that they explicitly said that in so many words, but that's one case where they recognize there can be value to the community. Would you go so far as to say that this is almost a unique case in terms of the record here of value to the community? Because I can't find it. I'm having a little trouble in figuring out just where to go for guidance in this. Well, it is unique in several ways. The fact that back in Manor of Marin, the Board listed value to the community as one of the factors to be considered, sort of suggests that this is, you know, after years of having seen cases, that suggests that value to the community is something that does come up in these cases. I don't know that I've seen a case that has such a strong component on value to the community as this one. So it's unique in that sense. It's not unique in the sense that the Board doesn't know what to do with it. It's the Board's job to know what to do with those factors. And I want to be clear that our position is not, of course, that this Court reweighs the Board's weigh-in. We know jurisdictionally that's not the role here. But they didn't weigh. They ignored. I mean, I think the difficulty, one of the difficulties in the case, is that basically your argument is they didn't dot the i's and cross the t's, that they didn't explain fully enough why they did or did not consider this factor. But let's presume hypothetically that they just said we've considered the Marin factors and we conclude that the Petitioner's not entitled to relief. Would that be enough under our case law? No. Because, you know, we issue a lot of memorandum dispositions, so-called unpublished cases, where we're very terse in what we say, and deliberately so. Here you have a very extensive decision by the immigration judge that goes into great detail. So it's hard for me to believe the BIA didn't read that or consider it. It's not as though all of these factors were simply washed over by the IJ. The IJ really did consider them. So in looking at the whole picture, my question is, are we elevating form over substance? Did the BIA really look at the situation? And I think my conclusion would be probably so. But tell me why you don't think so. The case law is the board has to demonstrate that they did consider the relevant factors, in particular when the board doesn't merely adopt the judge's decision. It's not what the judge did. It's what the board did. The case law is the board can't merely cite Madam Marin. The board has to show that it actually did the weighing of the factors. And it's, with all due respect, I don't see it as dotting and crossing the i's and t's. What I see it as is this is a unique case in the overwhelming amount of value to community rehabilitation. The positives are unique. But the board essentially ignored that from what we can tell. My view is if the board really had considered it, it wouldn't have so brusquely and almost arbitrarily dismissed it out of hand. They said in that long paragraph where they addressed the merits of the 212C, the offense is such that even if this was outstanding and unusual, we wouldn't grant relief. They can't do that either. They can't take one factor and say that alone decides it for us. All of the board case law and this Court's case law, George Yu from this Court that we cited in 20-J, basically said you can't just take you have to do the individual determination, the particularized determination and the weighing of all the factors. You can't take only one factor and say this decides it and outweighs everything else. Because of the extensive evidence here, I believe it's not dotting the i's, crossing the t's. If they actually had weighed it, it would have come out differently. I think they summarily ignored everything to reach a preconceived idea based on the conviction alone. That seems to be what they did. That's exactly what they can't do. Most cases don't have nearly the record that this case does. But they can't treat this case like other cases where there isn't that countervailing positive evidence and act like it's not there just because they're not used to seeing or just because they don't want to deal with it or they don't think it's that important. They have to say why all that countervailing positive evidence doesn't outweigh. They didn't here. They just said it doesn't and they seem to ignore exactly what it is. Let me ask you a question. The IJ relied on matter of gene. The board went to Moran and we, of course, just reviewed the board's decision. But I'm interested a little bit in peeking behind the curtain on that because if gene actually does apply and the board might well change its mind on remand and apply gene. Tell me why you think gene doesn't apply to this case. Sure. Which we did brief to both the judge and the boards. The board historically did consider whether to have a two-tiered system. And they came up with this in Edwards, this two-tiered system where you – there are cases you have to show the unusual and outstanding equities. We don't dispute that applies. The government historically argued for an even higher standard before the board. The board went through this analysis and determined that no, it's not appropriate to have a higher standard than the matter of Edwards unusual and outstanding. That's sufficient for the board to do all the weighing anyways. So the board itself has already considered, you know, the possibility there might be some subset of cases that require an even higher standard. They said, no, we're going to stick with our regime. When the attorney general promulgated a matter of gene, that was on a different form of relief. And there is an important difference. There was asylum adjustment. 212C is lawful permanent residents who have a history in the United States already. Asylum adjustment is individuals who had never been in lawful status other than asylees before. It's converting to a different status than they had. LPR – excuse me, 212C is keeping the same status they've already had. So it's a different analysis if the attorney general is going to say in matter of gene, before we allow someone to enter, be admitted and be a lawful permanent resident and take on a new status, and there is no other two-tiered system in the adjustment or the asylee adjustment, which is the matter of gene standard. So they're creating a differentiation where none had existed before. Here, where it's a matter of keeping your residency, there already is a two-tiered system. The government had previously argued there should be another tier, and the board itself said no. And attorney general never has suggested since that should apply, well, to my knowledge, until this case where the judge came up with it on his own. I see. So I think that's why, frankly, the BIA didn't want to touch that. I don't think it would work. Do you want to quickly address the motion to reopen? The motion to reopen. On the cat case in particular, the board's denial the first time on the cat was based on what I think was an improper factor of whether the elderly aunt and sister or her friend with a job could provide the needed protection. I think the original cat decision was wrong, but more importantly, the motion to reopen showed not only worsening conditions in China, which is exactly what had been predicted and the expert indicated did come to pass with a crackdown campaign on crime, but the expert also explained in the motion to reopen how things had changed with regard to the need for connections and special protection that he would no longer have, which is that the supposed job offer that the board thought this could offer protection was from a fit that trained nurses to come to the United States. That would be viewed as unpatriotic by China. That was new evidence that the need for the connections that the board thought he had simply wouldn't exist anymore, if it did exist. The elderly aunt had moved to another small village, had worked as a babysitter. The need for those connections, which we think he didn't have initially, but certainly the expert indicated with the changed conditions, the increased crackdown and the lessening of the perceived connections, that was an actual change that presented a prima facie case for a cat, which the board should have accepted as a prima facie case and reopened for a new hearing. I don't think this Court can grant cat on the motion to reopen facts. They have to remand. The Court could grant cat on the original appeal, cat claim, which I think the Court still can do, because I think the cat evidence was legit at that point also. I have a minute and a half, and I would like to reserve for rebuttal, if I could. Thank you. May it please the Court, Sarah Maloney for the respondent. The Court should deny the petitions for review. As to the – firstly, as to the 212C waiver issue.  This is a case, as to the 212C waiver issue, about the Attorney General reaching a rational decision that someone who committed such a serious and violent crime, someone who plotted and carried out a plan to commit a home invasion, a brutal home invasion, and terrorized a family, that person will not be granted the privilege of a 212C waiver in the exercise of discretion. And because this decision is rational and there are no legal errors, it's correct. Well, are you arguing that as a matter of law, they can – the Board can simply say we think the crime is so serious that we're not even going to look at anything else? I'm arguing that here what the Board did was legally correct. Under matter of Murrin, the – and Edwards affirms this – the Board may look to the 212C waiver in the exercise of discretion. The Board may look to even one adverse factor. And here it's the nature and underlying circumstances of his aggravated felony and firearms deportation offenses. And it can determine that that one factor is enough to – to deny the 212C waiver in the exercise of discretion. Here, the Board – We have to weigh, though. The Board has to weigh the factors. You can't just say, I think your argument seems to be that they can just rely on one factor and say that's the end of it. The Board can't do that, can it? No. The Board must consider all of the evidence, as it did here. It considered all the evidence. How do we know that they did here? Because it explicitly said so. As to – Counsel, let me – could I interject a question, please? Like, I thought the Board's language was very precise and careful about what they mentioned Mr. Zhang's commendable rehabilitation during imprisonment. They didn't mention his work for the community or his work with at-risk youth. At least, I didn't see that. If I missed it, where in the BIA decision do they talk about what he did for the community? Well, the Board made two independent – Someone could be rehabilitated and just stay at home and do nothing for the community. The Board made two independent findings on which to deny the 212C waiver. And what you're referencing, these positive equities, the Board considered whether all of the evidence – To help me understand, I know what your argument is on the other points, but I'm trying to figure out if they mentioned this point at all. So my question is, did the Board discuss what he did for the community? And if so, where in their opinion is that? The Board did not explicitly discuss what he did for the community. However, its Petitioner, under this Court's case law in the Rita Martinez, there is a presumption that the Board considered all of the evidence. And the Petitioner must rebut that presumption, must show that the Board didn't. And here, Petitioner didn't do that. The Board explicitly said that it conducted a de novo review of the case, and there's nothing to suggest that it did not fulfill its responsibility to consider all of the evidence presented in Petitioner's favor. The Board explicitly weighed Petitioner's, quote, commendable rehabilitation during imprisonment, end quote. How does that go to community service and contribution post-imprisonment? Well, Petitioner's evidence of value, what he claims is evidence of its value in service to the community, is that he participated in anti-crime education and service programs while in prison. And he also presented evidence that he potentially may continue to do good works once he's released. Now, while that all may go to show value in service to the community, it also could go to rehabilitation because he – it goes to show that he possibly restored himself to a useful life in part by doing those things. Well, that's reading a lot into that sentence, it seems to me. And I know you're in a – you're stuck with what the BIA said, but, you know, the BIA simply says the principal equities advanced are marriage to U.S. citizen, which occurred during the course of proceedings, lengthy residence, and is commendable rehabilitation during imprisonment. Now, if he hadn't attended any evidence of contribution to the community, I can understand why that would stop, but that was one of the major theories of the case. So how do we know, looking at these words, that the BIA actually weighed that factor or didn't conflate it into rehabilitation as we've discussed? Well, there's a presumption the BIA considered all the evidence. There's no requirement that the BIA itemize all of the factors and determine whether or not there's evidence to connect to it. There's also – it's also easy to imagine evidence that might go to one or two or more factors. For example, evidence of a stable employment history, evidence that the – that an alien was gainfully employed, always paid his taxes over the years, was never on public assistance, that could go to either employment history or it could go to value of service to the community. As long as the Board weighs that evidence, it doesn't matter which factor it weighs it under. There's no legal error if it weighs the evidence. And under Lopez v. Ashcroft, this Court said that the Board need not write an exedesis. It only has to show that it's considered the arguments and the evidence and came to a rational conclusion. And here it did so. It balanced the positive equities, determined there were no unusual and outstanding equities, and in any event, in an alternative finding, it found that the egregiousness of his crime outweighed any positive equities. But what would be an outstanding equity?  Kagan. What does the Government envision to be an example? What's the gold standard here? Do we have any cases that the Board has decided that help us on that? All of the cases, all of the cases that the Board, that the agency considers, have different facts and circumstances. There's always going to be a different crime. Here we have one of the most egregious crimes. This is not a traditional crime. As to equities, as to equities, they're all going to be different. But has the Government ever granted relief under these circumstances? I mean, what you're basically saying is that it's impossible, that there's no point to matter of Marin because if there's a serious crime involved, there's no possibility of recovery. Whereas Victor Hugo would say just declaring a shipwreck on a life. No. What I'm arguing is that the agency has been accorded the discretion by Congress to weigh the factors and make this determination as to whether or not to grant this privilege to a legal permanent resident. In this case, because we have 212C in conjunction with 245I. It's a decision, it's a discretionary decision for the agency to weigh all of the evidence and to make its own interpretation, to accord it its own weight, and to come up with a decision. Counsel Judge Gould with a question. How can we have a confidence that the agency weighed all the appropriate factors, including the value of Mr. Zheng to the community, if they didn't mention his work with at-risk kids, if they didn't mention this theory that was presented in his evidence? Are we just to assume that they considered it because of the presumption? It seems difficult. And also, they don't mention that this horrible crime was done when he was 16, and that he spent 20 years almost in prison after that and has been rehabilitated. They said he was rehabilitated, but the violent crime is a bit attenuated from the present. It sounds like you're saying that someone does a violent enough crime, that's the end of it, and that Marin can be a one-factor balancing. Well, here, here the Board looked to the conviction documents, to the documents that were prepared by and for the trial court. It explicitly said so. And those records can be found at page 1971 through 2003 of the record. And it looked at the underlying circumstances of his multiple aggravated felonies and made that decision, that the seriousness of his crimes outweighed any of the other many equities. And yes, under the Board's case law, the Board is entitled to make that discretionary decision. Now, the Board is required to look at all of the evidence as to the positive equities. And it explicitly stated that it was looking at the record de novo. And it mentioned positive factors. And that's what the evidence Petitioner was considering, the evidence Petitioner was considering would suggest, one of which, the evidence Petitioner complains that wasn't considered, easily falls into. So essentially what Petitioner is arguing is that the Board didn't consider his evidence, certain evidence. And there's no — there is nothing in the Board's decision to suggest that it didn't. There is nothing in the Board's decision to overcome this presumption that it did lie. Kagan. Well, if there are 19 pieces of evidence and the — and the decider lists 18 of the 19, you can say that it nevertheless considered the 19th as well? Because that seems to me kind of what you have here. They do a list. They listed — the Board listed factors. It didn't list the underlying evidence. It considered the underlying evidence that goes to these factors. And as I mentioned before, this evidence could go to one or two factors, just as other evidence could as well. Except that I think you'd have to concede, even if you conflate the evidence on rehabilitation and service to the community, that the Board did not consider post-release factors. Well, he — the Petitioner was still detained at the time of the immigration judge's  And that, of course, is the evidence before the immigration judge. He had been criminally incarcerated for 19 years, and then he was detained under immigration detention. He had never — he had never left prison. So while he potentially could continue good works once released, I mean, there is evidence in there, and that goes to rehabilitation to the extent that he potentially could continue to be useful, to have rehabilitated himself. There was no evidence that once he left, once he was released from prison, that he continued his good works. And under Lopez v. Ashcroft, the Board's decision is correct. As to the Convention Against Torture claim, substantial evidence supports the agency's decision that the Petitioner didn't show that he more likely than not would be tortured if he was returned to China. Now, his claim was based on a chain of events, each of which he was required to show that — that the event would more likely than not happen. And he didn't show that any of the events in the string of events more likely than not would occur. The first assumption on which his claim was based is that he might possibly be sent to live with his aunt in Tishan, a small village. Now, this is based on Dr. Lynch's testimony that because he didn't have a residence permit, that upon his return to China, officials may possibly send him to live with his aunt in Tishan. But Dr. Lynch also testified that the Petitioner could apply for a residence permit and might possibly be granted one to live in a city, such as the one he lived in before he returned to the United States. Therefore, he didn't show that this event more likely than not would happen. The second assumption is that his aunt wouldn't have any family and might possibly not have any social connections in Tishan and might not want to have anything to do with the Petitioner. But his Petitioner's sister, of course, testified that his aunt was like a mother to him, that she was married and has children. Now, there is no evidence, Petitioner submitted no evidence, that his aunt wouldn't help him once he returned. And in fact, before the parole board, before the California State Parole Board, the Petitioner's aunt would help him were he to return to China if he were given parole. So there's no evidence to show that his aunt, his uncle, or his cousins wouldn't want to have anything to do with him. That's one of Lynch's speculative assumptions. There's also no evidence to show that his uncle or his cousins wouldn't want to have anything to do with him. That's one of Lynch's speculative assumptions. In this particular case, I don't know, as a matter of fact, what China would do. I know Dr. Lynch testified that if he were to return, national officials would detain him temporarily and then determine what to do to him. They'd find out that he had committed crimes in the United States, possibly find out  that he had committed crimes in the United States, and then possibly send him to go live with them. But they wouldn't harm him. They would not mistreat him upon his return. In fact, the other assumptions, if I may have another couple of minutes, on which the CAC was based is Dr. Lynch testified that two to four years after Petitioner arrived in Tishan, he might possibly be arrested by local corrupt police officers. Now, that, of course, goes to the assumption that he – that his family didn't have any social connections in Tishan, and he might – and he could not possibly establish any goodwill or make social connections for himself over the course of that time, and that police officers in Tishan are corrupt.  So the assumption is that Petitioner's family didn't have any social connections in Tishan, and he might possibly be arrested by local corrupt police officers. And then the final is, of course, once he had been arbitrarily detained and arrested, he would be tortured. And there's no evidence specific to this in the record. Thank you. Thank you. Thank you. One more way we know that the Board failed to actually weigh the right facts here is they got one of the key facts wrong when they did list it, which is his sentence. They described his sentence as 15 to life, which is not actually what the record says. It was eight years minimum. And so to the extent that they are characterizing the offense and its seriousness as their, you know, ostensibly one reason, and they got that fact wrong, that also shows that they failed to consider the record correctly beyond the fact that, you know, it's not a permissible way to weigh the factors. And in fact, the Board in Edwards, in Buscemi, every case even where they do deny relief, it's clear they are looking at all the factors and listing them and weighing them. How much time did he spend in prison? He spent 19 years, Your Honor. The California Parole Board is notoriously conservative on who they release, and he was granted a release twice. And that's what we're looking at here.   We're not going to hear a lot of this case. We're familiar with it. The testimony in this case was that based on his rehabilitation but for political concerns, he should have been released much earlier. And how long was he in INS detention? About two and a half years. And his work with the kids took place? During prison and after, as we showed in the motion to reopen. All right. And does the record show what's going to happen to him if he goes back, if he's sent back to China? Dr. Lynch, AR-133 declaration in our motion to reopen describes then the current conditions about what Dr. Lynch thinks would happen to him if he's sent back. That's our main evidence of that. All right. Are there any further questions, Petitioner? Thank you. Thank you. The matters just argued are submitted for decision.
judges: Schroeder, Thomas, Gould